# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>For the Use and Benefit of MMC/P1, )<br> )<br>**Plaintiff,** )<br> )<br>v. ) <br> )<br>BALFOUR-WALTON, a Joint Venture, et al., )<br> )<br>**Defendants.** )<br> ) | Case No. 16-2484-JTM-GEB |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Balfour-Walton's Motion to Stay Pending Contractually Required Dispute Resolution (**ECF No. 8**) and the Joinder to that motion filed by the remaining defendants (ECF No. 9). On September 28, 2016, the Court conducted an in-person hearing on the motion. Plaintiff MMC/P1 appeared through counsel, Jeffrey Rosen. All defendants appeared through counsel, Diane Lewis and Heather Shore. After review of the parties' briefs and hearing arguments of counsel, the Court announced its ruling at the September 28, 2016 hearing. This order memorializes the oral ruling and **GRANTS IN PART** and **DENIES IN PART** the motion for the reasons set forth below.

## **Background**[1]

In April 2009, the United States Army Corps of Engineers ("USACE") as administrator entered into a contract with Balfour-Walton, a Joint Venture ("BWJV"), to act as general contractor on construction of the new $400 million Irwin Army Community Hospital (the "Project") on post in Fort Riley, Kansas. Construction began in 2010, and what followed was a time-consuming and expensive project, fraught with confusion, delays and difficulties, on which construction and disputes continue more than seven years later.

**Nature of the Claims**

As with most construction contracts, a number of subcontracts arose in order to complete the Project. In May 2011, plaintiff MMC/P1 and defendant BWJV entered into one of those subcontracts for a total subcontract price of $53,957,700.00. MMC/P1 agreed to perform HVAC[2] installation, plumbing, and direct digital control work related to those systems. The remaining defendants[3] acted as sureties on the performance bond to guarantee payment to BWJV's subcontractors.

Neither party disputes the Project was plagued with difficulties, but the parties disagree on the origin of those problems. BWJV claims the USACE mismanaged the

---

[1] The information recited in this section is taken from the pleadings and from the briefs regarding the Motions to Stay in this action, as well as information publicly available on the Court's Electronic Filing Systems regarding other related actions. This background information should not be construed as judicial findings or factual determinations unless specifically stated.

[2] Heating, Ventilating and Air Conditioning work ("HVAC").

[3] The remaining defendants are: Travelers Casualty and Surety Company; Fidelity and Deposit Company of Maryland; Liberty Mutual Insurance Company; Federal Insurance Company; and Zurich American Insurance Company.

whole Project, which caused numerous delays and increased expenses for both BWJV and its subcontractors.[4] BWJV also contends the USACE failed to properly design the Project, which led to a lack of coordination between the moving parts of the Project and, in some cases, a failure to meet industry codes. For example, BWJV claims design problems on the building envelope, air and vapor barrier, stairs, roof and expansion joints caused significant issues for almost all subcontractors and resulted in work performed out of sequence and in a "stop-and-start" manner. In addition to the mismanagement and poor design, BWJV claims the USACE issued numerous and continual changes to the agreed scope of work, refused to pay for the modifications, and excessively inspected the project.

MMC/P1 sees the situation differently. While it contends a portion of its claims may originate with the USACE, it believes BWJV is guilty of mismanagement separate and apart from the USACE. Of the $15,586,092.75 in total damages sought by MMC/P1, it believes at least $5,548,780.50 of those damages were caused directly by BWJV's actions and inactions as general contractor. It cites issues such as BWJV's failure to provide necessary items—toilets for the workmen, temporary power to the jobsite, and hoists in key work areas—which impacted productivity and increased costs. MMC/P1 also claims it performed extra work to repair defects caused by BWJV and other subcontractors, including concrete work, tile repair, and radiant panel repair. According to MMC/P1, BWJV is wrongfully withholding $2,008,164.16 of earned retention which is due to it. Finally, MMC/P1 claims unpaid "Blast Steel" and "Radiology" changes on

---

[4] The USACE is not a party to this action.

3

the Project resulted in more than $2.2 million in damages to MMC/P1, but it believes BWJV underhandedly released the USACE from those claims in order to settle other portions of BWJV's claims on those change orders.

**Subcontract**

The subcontract between BWJV and MMC/P1 incorporates the Contract Disputes Act ("CDA"), 41 U.S.C. § 7101 *et seq.,* and Federal Acquisition Regulations 52.233-1.[5] The CDA requires the contractor on a Federal Government contract to submit a certified claim against the government to a contracting officer, who issues a written decision.[6] If the decision does not occur in a reasonable timeframe, or the claim is denied, the contractor may then appeal the decision to an agency board (in this case, the Armed Services Board of Contract Appeals) or bring an action in the U. S. Court of Federal Claims.[7] The CDA also provides for alternative dispute resolution.[8] Neither the statutes nor the parties articulate an expected or typical timeframe for conclusion of the CDA process.

Two provisions in the subcontract govern disputes between the subcontractor and contractor: 1) Article 11, dealing in part with notice; and 2) Article 12 specifically addressing "Contract Interpretation and Disputes." Paragraph 12.(B) outlines the process for dispute resolution between the subcontractor and contractor. If the "Subcontractor believes [its claim] is due to an action or inaction of the Contractor that is

---

[5] *See* 48 C.F.R. § 52.233-1.
[6] 41 U.S.C. § 7103.
[7] 41 U.S.C. § 7104.
[8] 41 U.S.C. § 7103(h).

independent of the Owner, Subcontractor will comply with the notice requirements of Article 11.A.(7)."  Article 12.(B) then allows for two types of procedures to resolve those disputes:

> 12.B.(1):   In case of any dispute between or among Contractor and Subcontractor or their respective sureties, in any way *relating to or arising from any act or omission of the Owner* or involving the Contract Documents provided by the Owner, Subcontractor agrees to be bound to Contractor to the same extent that Contractor is bound to the Owner by the terms of the other Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder by the party, board or court so authorized in the Contract Documents or by law, whether or not Subcontractor is a party to such proceedings. *In case of such dispute, Subcontractor will comply with all provisions of the Contract Documents, allowing a reasonable time for Contractor to analyze and forward to the Owner any required communications or documentation*. Contractor will, at its option: (a) present to the Owner in Contractor's name or (b) authorize Subcontractor to present to the Owner in Contractor's name, all of Subcontractor's claims . . . . On any project which may be subject to the [CDA] . . . Subcontractor will furnish Contractor with a certification of any claim in a form satisfactory to Contractor . . . .
>
> 12.B.(2):   *To the extent not resolved under Article 12.B.(1)* above, any dispute between or among Contractor and its surety and Subcontractor . . . will, at Contractor's sole option, be decided either through litigation or by arbitration . . . .   Upon its request, Contractor will be entitled to consolidation or joinder of any arbitration involving Subcontractor with related arbitration involving other parties . . . .  If Contractor or its surety notifies Subcontractor that Contractor or its surety contends any arbitration or lawsuit brought under this Article 12.B.(2) involves a controversy within the scope of Article 12.B.(1), the dispute process under this Article 12.B.(2) will be stayed until the procedures under Article 12.B.(1) are completed.[9]

**Informal Claims**

MMC/P1 argues it submitted two types of claims during construction:  USACE-caused Article 12.B.(1) claims, and BWJV-caused Article 12.B.(2) claims.  These claims

---

[9] Subcontract between BWJV and MMC/P1, attached as Ex. B to ECF No. 8, at 37-39 (emphasis added).

5

were generally for equitable adjustments (change orders) and claims for damages, such as additional costs and delays. MMC/P1 submitted the claims to BWJV through letters, Proposed Change Orders, and Statements of Compensation Due. MMC/P1 asserts it repeatedly asked BWJV to exercise its Article 12.B.(2) option to litigate or arbitrate its claims, but BWJV simply ignored its requests. In December 2015, MMC/P1 delivered to all Defendants a 141-page Statement of Claims Due in an effort to engage some type of review process with regard to its claims. MMC/P1 contends BWJV continued to ignore its demands, in breach of the parties' subcontract.

BWJV justifies that, while fielding complaints from many of its subcontractors, it was also preparing its own claim to the USACE—an arduous process that took more than a year to complete. On April 22, 2016, BWJV submitted an Omnibus Claim to the USACE, not only on its own behalf, but to pass through its subcontractors' claims. Through the Omnibus Claim, BWJV seeks "to recover $88,836,678.02 in additional costs and an extension of time for 412 days of excusable delay . . . as a result of the USACE's maladministration, deficient design and other breaches." (BWJV's Mem., ECF No. 8 at 2.) BWJV's claim includes MMC/P1's claim in the amount of $13,578,155.69 against BWJV, which also includes the claims of MMC/P1's subcontractors.[10] The Omnibus Claim also includes claims from BWJV's other subcontractors, passed through to the USACE.

Prior to submission of the Omnibus Claim, BWJV contacted MMC/P1 to seek certification of MMC/P1's claims for inclusion, as required by the subcontract. MMC/P1

---

[10] *See infra* note 12. Two of MMC/P1's subcontractors—Cates Sheet Metal Industries, Inc. and Performance Contracting, Inc.—have also filed suit against BWJV.

argues it gave only a "limited" certification to BWJV—certifying the amounts and good faith of the claims, but not certifying it believed the USACE to be liable.  MMC/P1 contends the parties agreed BWJV would need to prove the USACE's liability in the CDA proceedings, and the limited certification did not preclude MMC/P1 from later invoking its right to litigate or arbitrate its claims if BWJV could not prove the USACE's liability for all of MMC/P1's claims.  BWJV disputes the certification was "limited," but neither party produced evidence of the terms of the certification for the Court's review. Regardless of the breadth of MMC/P1's certification, the Omnibus Claim has been submitted to the USACE and BWJV believes it contains all pass-through claims of the subcontractors.

Applying the CDA process, BWJV and the USACE entered into an Alternative Dispute Resolution Agreement to mediate the Omnibus Claim. This mediation is scheduled to occur on October 31 through November 3, 2016.  In preparation for mediation, BWJV has held group meetings with the subcontractors to both explain the process and prepare the group's claims.  The subcontractors, including MMC/P1, were invited and are expected to participate in the mediation.

**This Litigation**

Although MMC/P1 believed its certification was limited regarding the Omnibus Claim, it later learned BWJV included all of MMC/P1's claims in the CDA proceeding, including the claims for damages which MMC/P1 believes were caused solely by BWJV. On July 6, 2016, MMC/P1 filed its Miller Act Complaint in this case.  MMC/P1 makes breach of contract, unjust enrichment, and misrepresentation claims against BWJV, as

7

well as Miller Act claims against all Defendants. The responsive pleading deadline for Defendants was stayed pending resolution of the motion to stay (Order, ECF No. 7).

**Related Litigation**

Including this action, 11 Miller Act lawsuits have been filed against BWJV in this jurisdiction related to the same construction Project. Of the ten other cases filed since April 2014, only one—the earliest-filed—was stayed after thorough analysis of various factors relevant to stay (*see* discussion *infra* pp. 13-14).[11] Five cases were stayed on agreed motions by the parties, citing the earlier analysis.[12] Two cases were dismissed by the parties;[13] one contains a pending motion to stay;[14] and one case was recently filed and the defendants have yet to file responsive pleadings.[15]

---

[11] *U.S. ex rel. W&W Steel v. Balfour-Walton*, 14-4025-KHV-JPO (filed Apr. 9, 2014; stayed July 10, 2014) (W&W Steel was subcontracted by BWJV to perform structural steel work on the Project).

[12] *U.S. ex rel. Murray Drywall & Insulation of Texas v. Balfour-Walton*, 15-4013-SAC-KGS (filed Jan. 27, 2015; stayed June 30, 2015) (BWJV subcontracted Murray for the drywall and acoustical work on the project); *U.S. ex rel. Steven A. Rebein v. Balfour-Walton*, 15-4944-SAC-KGS (filed Oct. 1, 2015; stayed Dec. 12, 2015) (MMC/P1 subcontracted Cates Sheet Metal for the HVAC sheet metal system on the Project; Cates declared bankruptcy and Rebein is Bankruptcy Trustee of the bankruptcy estate); *U.S. ex rel. Alpha Insulation & Waterproofing v. Balfour-Walton*, 16-2189-JTM-GLR (filed Mar. 24, 2016; stayed June 20, 2016) (BWJV subcontracted Alpha for the spray-applied thermal insulation, air barrier, and related labor and materials); *U.S. ex rel. Performance Contracting Inc. v. Balfour-Walton*, 16-4068-DDC-KGS (filed May 24, 2016; stayed July 14, 2016) (MMC/P1 subcontracted PCI to install mechanical and plumbing insulation); *U.S. ex rel. Intrepid Enterprises Inc. v. Balfour-Walton*, 16-2478-JAR-JPO (filed July 5, 2016; stayed July 27, 2016) (BWJV subcontracted Intrepid to perform undescribed work on the Project).

[13] *U.S. ex rel. Great Plains Roofing and Sheet Metal, Inc. v. Balfour-Walton et al*, 15-9371-JAR-KGG (filed Nov. 3, 2015 and dismissed jointly on Mar. 21, 2016) (BWJV subcontracted Great Plains for roofing work on the Project); *U.S. ex rel. Musselman and Hall Contractors, LLC v. Balfour-Walton*, 16-2561-JAR-TJJ (filed Aug. 12, 2016 and dismissed by plaintiff on Oct. 12, 2016) (BWJV subcontracted Musselman and Hall for masonry work on the Project).

[14] *U.S. ex rel. Image Flooring, LLC et al v. Balfour-Walton*, 16-2497-CM-GLR (filed July 12, 2016). BWJV subcontracted Image for the flooring on the Project. Although BWJV requests a stay (ECF No. 16); Image's opposition (ECF No. 21) contends, "Image Flooring has no

## **Motions to Strike the Third-Party Complaints (ECF Nos. 32, 36)**

BWJV seeks to stay this action, in its entirety, pending complete resolution of the CDA process. It argues MMC/P1's Complaint is "related to delays, out-of-sequence work, and alleged Project mismanagement, all of which arise from the very problems BWJV is seeking to address with the USACE in mediation or with the Armed Services Board of Contract Appeals if mediation is not successful." (Def.'s Mot., ECF No. 8 at 8.) Citing the dispute resolution process set out in the parties' subcontract, and stays of the six previous actions, BWJV believes this case should be similarly stayed.

MMC/P1 contends BWJV is seeking a stay to "unwind its wrongful conduct" and attempt collection from the USACE first rather than pay MMC/P1 itself. MMC/P1 argues BWJV materially breached the subcontract by repeatedly failing to respond to MMC/P1's demands, and should not now hide behind the subcontract to postpone MMC/P1's recovery. MMC/P1 believes it is owed more than $15.5 million in damages—$5.5 million of which has nothing to do with the USACE—and MMC/P1 has been without those funds for five years. Although the subcontract gives BWJV the right to request a stay, MMC/P1 contends this is only one factor for the Court to consider when deciding whether to grant a stay. Based on the facts of this case, MMC/P1 asks the Court to deny the stay.

---

objection to staying this litigation until November 30, 2016, and Image Flooring would have no objection to the Court's decision if this was the length of the stay entered against Image Flooring. However, Image Flooring has serious concerns that an indefinite stay would prejudice Image Flooring and delay its day in court indefinitely."

[15] *U.S. ex rel. ISEC, Inc. v. Balfour-Walton, et al*, 16-2603-JWL-GLR (filed Aug. 31, 2016). (BWJV subcontracted ISEC for finish work, including finish carpentry, millwork and casework, and medical, laboratory and dental equipment for the Project).

**Legal Standards**

It is well-settled that the decision to stay litigation is within the Court's inherent power to control its docket and rests in its sound discretion.[16] The Court may exercise that power in the interest of economy of time and effort for itself and for counsel and parties appearing before it.[17] In discharging its discretion, the Court must "weigh competing interests and maintain an even balance."[18] The party requesting the stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."[19] The Tenth Circuit Court of Appeals has cautioned that "the right to proceed in court should not be denied except under the most extreme circumstances, [20] relying in part on a U.S. Supreme Court decision announcing, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."[21] It would be an abuse of discretion to "issue a stay of infinite duration in the absence of a pressing need."[22]

In the District of Kansas, five primary factors are generally analyzed when weighing whether to grant a stay: "(1) plaintiff's interests in proceeding expeditiously

---

[16] *Universal Premium Acceptance Corp. v. Oxford Bank & Trust,* No. 02–2448–KHV, 2002 WL 31898217, at *1 (D. Kan. Dec. 10, 2002) (citing *Pet Milk Co. v. Ritter,* 323 F.2d 586, 588 (10th Cir. 1963)).
[17] *Id.* (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936)).
[18] *Pipeline Prods., Inc. v. Horsepower Entm't*, No. 15-4890-KHV-KGS, 2016 WL 1448483, at *1 (D. Kan. Apr. 13, 2016) (citing *Landis*, 299 U.S. at 255).
[19] *Landis*, 299 U.S. at 255.
[20] *Kendall State Bank v. Fleming*, No. 12-2134-JWL-DJW, 2012 WL 3143866, at *2 (D. Kan. Aug. 1, 2012) (citing *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.,* 713 F.2d 1477, 1484 (10th Cir.1983)).
[21] *Landis*, 299 U.S. at 255.
[22] *Klaver Const. Co. v. Kansas Dep't of Transp.*, No. 99-2510-KHV, 2001 WL 1000679, at *2 (D. Kan. Aug. 23, 2001) (citing *Landis*, 299 U.S. at 256).

with an action and the potential prejudice to plaintiffs of a delay; (2) the burden on defendants; (3) the convenience to the court; (4) the interests of persons not parties to the litigation; and (5) the public interest."[23]

**Analysis**

Aside from citing the 2014 opinion staying the first case filed on this Project, neither party cites case law nor discusses the factors necessary for this Court to review when considering whether to grant the stay of any case. After careful application of the factors to the facts of this case, the Court finds the situation revealed by Defendants to be neither rare nor extreme, and finds an indefinite stay of this action would cause a clear detriment to Plaintiff.

    1.    **Plaintiff's Interests**

First, Plaintiff bears a reasonable expectation its case will proceed expeditiously. In fact, Fed. R. Civ. P. 1 directs the court to ensure the just and speedy determination of this case. Plaintiff demonstrates it has been unpaid for its performance under the contract for approximately five years to the tune of millions of dollars; therefore, the potential prejudice to Plaintiff by extended stay is apparent. Years of demands to Defendants have apparently yielded little results, to date. To continuously postpone relief to the subcontractors is to effectively hold them hostage. This factor weighs in favor of denying the motion to stay.

---

[23] *Klaver Constr. Co.*, 2001 WL 1000679, at *3 (citing *FDIC v. Renda*, No. 85–2216–O, 1987 WL 348635, at *2 (D. Kan. Aug. 6, 1987)); *see also Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, No. 11-2340-JWL, 2013 WL 11332740, at *3 (D. Kan. Oct. 24, 2013).

2. **Burden on Defendants**

Second, Defendants demonstrate little burden to maintaining this lawsuit in conjunction with their CDA proceeding, aside from the potential cost and effort which may be expended in defending separate claims in separate forums. However, defendant BWJV is the claimant in the CDA proceeding and its attempt to assert its claims against the USACE should not be hindered by MMC/P1's claim in this forum. In fact, the evidence for each claim should overlap, and all parties should be intimately familiar with the documentation for their claims/defenses, given the preparation undergone for the upcoming CDA mediation. Therefore, discovery in this matter should be able to proceed alongside the CDA action with minor difficulty to Defendants. As discussed in *Landis v. N. Am. Co.*, MMC/P1 should not be compelled to stand idle while BWJV "settles the rule of law that will define the rights of both" parties.[24]

Weighing the prejudice to Plaintiff by postponing this action, against the potential prejudice to Defendants by moving forward, the balance of these factors weighs in favor of denying a stay. The cases stemming from this Project have persisted for more than two years. At least one subcontractor was forced to declare bankruptcy,[25] allegedly as a result of the delay in payment by BWJV. In this Court's eyes, the potential prejudice to Plaintiff imposed by extended delay outweighs any difficulty borne by Defendants in maintaining separate actions.

---

[24] 299 U.S. 248, 255.

[25] *See supra* note 12, discussing *U.S. ex rel. Steven A. Rebein v. Balfour-Walton*, 15-4944-SAC-KGS.

### 3. Convenience to the Court

The third factor for consideration is the convenience to the Court itself; however, this factor does not tip the scales either way under these facts. Whether this matter continues at full-speed or is stayed in its entirely, the "consideration of judicial economy . . . should rarely if ever lead to such broad curtailment of the access to the courts."[26]

### 4. Interests of Other Parties and/or the Public

In some respects, the convenience to the Courts and the final factors of analysis—the interests of other parties and/or the public—could become intertwined. Other subcontractors with interrelated claims—and those other cases—may not be directly affected by the progress of this case, but the Court acknowledges its order here could have a ripple effect. Although this decision is not binding on other cases, it may establish a pattern for future cases, much like the initial Order staying the *W&W Steel* case.[27] The Court's intent is not to disturb the opinions or agreements reached in other cases; rather, the Court takes a fresh look at the facts before it at this time.

The respected and well-reasoned opinion in *W&W Steel*—which formed the basis for the agreed stays and upon which BWJV now relies—is two years old. BWJV has demonstrated little progress over the span of those two years. In *W&W Steel*, the Court found "if Balfour should fail—through its negligence or otherwise—to fulfill its obligations to W&W regarding W&W's certified claim, the court will lift the stay and

---

[26] *Commodity Futures Trading Comm'n*, 713 F.2d at 1485.
[27] *U.S. ex rel. W&W Steel v. Balfour-Walton*, 14-4025-KHV-JPO (Order granting stay, ECF No. 50, D. Kan. July 10, 2014).

expedite these proceedings."[28]  Making no findings regarding BWJV's efforts, the Court simply believes it necessary to move this matter "over the hump" and attempt to assist the parties in receiving the benefits of their bargain, whatever those benefits are ultimately determined to be.

Not only do the passage of time and lack of progress distinguish this case from the previously-stayed actions, but this case differs in a third aspect.  Here, MMC/P1 asserts claims directly against BWJV which it believes should not be certified against the USACE.  In *W&W Steel*, the plaintiff did not dispute the allegations it asserted in its lawsuit were "largely the same" as those asserted by BWJV in the CDA proceeding.[29]

**Conclusion**

As noted above, the parties avoided analysis of the factors for stay, and primarily focused on the provisions of the subcontract and whether Plaintiff's claims fit into Article 12.(B)(1) or (2).  At this juncture, the Court uses its discretion to manage its docket without making findings regarding the parties' contract. After application of the factors for stay, the Court finds it appropriate for MMC/P1's claims to move forward.

However, the Court notes the value in all parties to the Project coming together for mediation on October 31, and waiting to ascertain whether that process results in a global settlement with the USACE, BWJV, and all affected subcontractors.  The imminent mediation should provide the parties an opportunity to assess the claims and defenses of all involved entities.  For that reason, the Court **GRANTS** Defendants' motion **IN**

---

[28] *W&W Steel*, 14-4025-KHV-JPO (Order denying motion to lift stay, ECF No. 59, D. Kan. Oct. 30, 2014).
[29] *W&W Steel*, 14-4025-KHV-JPO (Order granting stay, ECF No. 50, at 4).

**PART**, pending conclusion of the mediation process scheduled for October 31 through November 3, 2016.

If the parties are unable to resolve their dispute through the CDA mediation process, however, this case shall move forward with scheduling and discovery. In sum, BWJV has not demonstrated a clear case of hardship or inequity which outweighs MMC/P1's interest in proceeding with its claims in the event mediation is unsuccessful. In that respect, Defendants' motion for an indefinite stay is **DENIED**. If the CDA process does not yield results before this case is prepared for dispositive motions or trial, the Court could entertain another motion for stay at that time in order to avoid a potentially conflicting decision. But simply postponing MMC/P1's day in court is not an option at this time.

**IT IS THEREFORE ORDERED** that the Motion to Stay (**ECF No. 8**) filed by defendant Balfour-Walton and joined by the remaining defendants (ECF No. 9) is **GRANTED IN PART** and **DENIED IN PART** as set forth above. The parties shall file a joint status report, following the conclusion of the CDA mediation process, no later than **November 11, 2016**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 21st day of October 2016.

                                                  s/ Gwynne E. Birzer
                                                  GWYNNE E. BIRZER
                                                  United States Magistrate Judge