IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
For the Use and Benefit of MMC/P1,

        Plaintiff,

v.                                                 Case No. 2:16-cv-02484-JTM-GEB

BALFOUR-WALTON, a Joint Venture, et al.,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on defendant Balfour-Walton's objections to a ruling by the U.S. Magistrate Judge denying defendant's request for a stay. Dkt. 27. The motion has been fully briefed, including a surreply filed by plaintiff MMC/P1. For the reasons set forth below, the court concludes that the matter should be remanded so that the Magistrate can consider the impact of the parties' subcontract on the request for a stay.

**I. Background.**

This action stems from construction of the Irwin Army Community Hospital in Fort Riley, Kansas. In April 2009, the U.S. Army Corps of Engineers ("USACE"), as administrator, contracted with Balfour-Walton (hereinafter "BWJV"), as general contractor, for construction of the new $400 million hospital facility. BWJV in turn entered into a number of subcontracts, including one with plaintiff MMC/P1, under

which the latter was to perform HVAC installation, plumbing, and other work for a total price of over $53 million.

Like most large projects, there were a number of changes, delays, and problems. This action is one of about nine cases in the district relating to the project.[1] BWJV claims that USACE caused increased costs and damages through changes in design and scope of the work, as well as through mismanagement of the project. Pursuant to the prime contract and the Contract Disputes Act (CDA), 41 U.S.C. § 7101 et seq., BWJV submitted a certified claim against the government seeking over $93 million in compensation. This claim included various "pass-through" claims by BWJV's subcontractors, including one for more than $13 million for work done by MMC/P1. Dkt. 27 at 6. At last report, USACE and BWJV were still engaged in mediation on the $93 million omnibus claim, after which BWJV may pursue an administrative appeal of a Government contracting officer's determination. *See* Dkt. 28. The mediation is expected to last for a "few weeks" following conclusion of a meeting on November 4, 2016.[2]

MMC/P1 alleges in this action that it is owed more than $15 million for work it performed, and it mostly (but not entirely) blames BWJV, not the USACE, for having caused and being responsible for these costs. For that reason, it says, when it certified the above-mentioned $13 million pass-through claim, it refused to certify a belief that

---

[1] BWJV has now filed a motion asking that the other pending cases be consolidated with this action. Dkt. 36.

[2] As noted by the Magistrate Judge, the CDA generally requires the contractor on a federal project to first submit a certified claim to a government contracting officer, who issues a written decision. If the claim is denied (or not timely ruled upon), the contractor may appeal to an agency board, in this instance the Armed Services Board of Contract Appeals (ASBCA), or bring an action in the U.S. Court of Federal Claims. *See* 41 U.S.C. § 7101 et seq.. The CDA permits the contractor and the contracting officer to use alternative means of dispute resolution. 41 U.S.C. § 7103(h).

USACE was liable for the costs. Instead, it only certified that MMC/P1 was legitimately entitled to the costs.[3]

The subcontract between BWJV and MMC/P1 contains a provision governing "Subcontractor/Contractor Disputes." Dkt. 8-2 at 38. It provides in part that in the event of any dispute, the Subcontractor may make a claim and the dispute will be resolved under one of two provisions - Article 12.B.(1) or Article 12.B.(2). If the Subcontractor believes it is entitled to an adjustment due to action or inaction of the Contractor that is independent of the Owner (i.e., USACE), it must give timely notice (within three days of the event) to the Contractor pursuant to Article 11.A.(7) of the Contract.

Article 12.B.(1) of the contract deals with disputes "in any way relating to or arising from" any act or omission of the Owner or involving the Contract Documents provided by the Owner. On such disputes, Subcontractor "agrees to be bound to Contractor to the same extent that Contractor is bound to the Owner by the terms of the other Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder by the party, board or court so authorized in the Contract Documents or by law, whether or not Subcontractor is a party to such proceedings." It requires the Subcontractor to provide documentation and allows the Contractor to present all of Subcontractor's claims to the Owner or have the Subcontractor present them. On a project (including this one) subject to the CDA, it

---

[3] Under the CDA, the claim made by a contractor to the government must include a certification that the amount reflects an adjustment "for which the contractor believes the Federal Government is liable." 41 U.S.C. § 7103(b)(1)(C).

3

requires the Subcontractor to furnish the Contractor with a certification of any claim in a form satisfactory to the Contractor.

Article 12.B.(2) of the contract provides that to the extent any dispute is not resolved under 12.B.(1), it will, at Contractor's sole option, be decided either through litigation or by arbitration. If Contractor notifies Subcontractor "that Contractor or its surety contends [that] any arbitration or lawsuit brought under this Article 12.B(2) involves a controversy within the scope of Article 12.B.(1), the dispute process under this Article 12.B.(2) will be stayed until the procedures under Article 12.B.(1) are completed."

MMC/P1 filed this action on July 6, 2016, asserting claims against BWJV and its surety under several theories, including the Miller Act, 40 U.S.C. § 3131 et seq. On August 12, 2016, BWJV (and several co-defendant sureties) moved to stay the case pending resolution of the CDA process, arguing the subcontract provisions cited above required a stay. In response, MMC/P1 argued it was seeking to recover damages caused by BWJV, not by USACE, and that it had a right to pursue such claims under Article 12.B.(2) of the subcontract. Dkt. 10 at 2. It said the flaw in BWJV's argument was that "millions of dollars of MMC/P1's claims, which BWJV has certified against USACE, are solely due to actions and inactions of BWJV and could not, from MMC/P1's perspective, be the responsibility of the USACE…." *Id*. It went on to concede the possibility, however, that USACE might be responsible for a little over $10 million of its claims, and in apparent recognition of the stay provision in Article 12.B.(2), stated it "does not object to a limited stay of those claims only." Dkt. 10 at 2, n.1. It

4

argued that the remaining $5 million of its claims could not have been caused by USACE and that its suit to recover those claims should not be stayed.

After hearing arguments, the Magistrate Judge stayed the action until completion of a mediation session on November 3, 2016, but said after that date "this case shall move forward with scheduling and discovery." Dkt. 30 at 15. The Magistrate did not consider the parties' rights under the subcontract, relying instead on the five-part test for a stay outlined in *Klaver Constr. Co., Inc. v. Ks. Dept. of Transportation*, 2001 WL 1000679 (D. Kan. Aug. 23, 2001). Under that test, the court concluded that the potential prejudice to MMC/P1 weighed against a stay; that BWJV failed to show it would be unduly prejudiced; that convenience to the court did not tip the scales either way; and that although a stay had been granted in related cases, the only contested order of stay in those matters was two years old and, unlike those cases, the subcontractor here is asserting claims it believes should not be certified against the USACE.

**II. Standard of Review.**

Objections to a magistrate judge's ruling on a non-dispositive matter are reviewed pursuant to Fed. R. Civ. P. 72(a). Under that provision, "the district court in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." *Id*.

**III. Discussion.**

BWJV and MMC/P1 entered into a subcontract agreeing to their respective rights and responsibilities concerning work on this project. The contract included a provision specifically governing "Subcontractor/Contractor Disputes." Dkt. 8-2 at 38.   Article

5

12.B.(1), which applies to disputes "in any way relating to … any act or omission of the Owner," are resolved under a CDA administrative process that can include "pass-through" of subcontractor claims to the Owner. To the extent any dispute is not resolved under Article 12.B.(1), it will be decided "at Contractor's sole option" either through litigation or by arbitration, and if the contractor notifies the subcontractor that it "contends any … lawsuit brought under this Article 12.B.(2) involves a controversy within the scope of Article 12.B.(1), the dispute process under this Article 12.B.(2) *will be stayed* until the procedures under Article 12.B.(1) are completed." (emphasis added).

The validity of these provisions, whether they are compatible with the requirements of the Miller Act, and whether some potential defense might prevent their application, are not issues currently before the court. What is before the court is whether the legally relevant factors were considered in the Magistrate's denial of a stay beyond November 3, 2016. After reviewing the record, the court concludes as a matter of law that the parties' contractual agreement must be considered here in determining whether a stay is appropriate. If the parties voluntarily and validly agreed that claims of the type made in this litigation "will be stayed" pending exhaustion of the CDA process, then any assessment of whether a stay is appropriate must take that fact into account.

MMC/P1 contends the Magistrate properly took the subcontract into account, noting that the Magistrate's opinion "cited Article 12.B.(2) in its entirety," and arguing that the judge "clearly considered this language, along with the other factors set out in the *Klaver*, decision" in denying the stay. Dkt. 29 at 8. What is clear from a reading of the

opinion is that the Magistrate Judge did *not* consider the parties' contract. The order stated that although the parties "primarily focused on the provisions of the subcontract," and whether the claims fit into Article 12.B.(1) or (2), "[a]t this juncture, the Court uses its discretion to manage its docket without making findings regarding the parties' contract." Dkt. 30 at 14.

The Magistrate's efforts to get this case moving are salutary and arguably further the Miller Act's purpose of protecting persons supplying labor and materials for federal construction projects. But the impact of the parties' written agreement must be taken into account in determining whether a stay is appropriate. In considering the agreement, the Magistrate Judge is free upon remand to assess the likelihood that the stay provision in the subcontract applies or does not apply to the claims in this lawsuit, and the likelihood that MMC/P1 might be able to establish some contractual or public policy defense to the provision.

IT IS THEREFORE ORDERED this 14th day of December, 2016, that BWJV's Motion for Review (Dkt. 27) is GRANTED.  The Magistrate Judge's order (Dkt. 30) on the motion to stay is vacated and the matter is remanded for further consideration. Defendants' responsive pleading deadline is hereby stayed pending a further ruling by the Magistrate Judge.

                                              ___s/ J. Thomas Marten_____
                                              J. THOMAS MARTEN, JUDGE